UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 13-30321 (JAM) |
| | ) | | |
| KELLY KATHERINE FOX, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | | |
| | ) | | |
| SHANA BEAULIEU, | ) | ADV. PRO. No. | 13-03017 |
| | ) | | |
| PLAINTIFF | ) | ECF Nos. | 1, 34, 58 |
| | ) | | |
| v. | ) | | |
| | ) | | |
| KELLY KATHERINE FOX, | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

## DECISION ON REMAND FROM DISTRICT COURT

**I.     INTRODUCTION**

On December 31, 2014, Kelly Katherine Fox (the "Defendant"), appealed this Court's Memorandum of Decision dated November 14, 2014 (the "Memorandum of Decision"), which deemed the debt she owed to Shana Beaulieu (the "Plaintiff"), nondischargeable pursuant to 11 U.S.C. § 523(a)(4).[1] On September 30, 2015, the Honorable Alvin W. Thompson, United States District Judge for the District of Connecticut (the "District Court"), issued a Ruling on Bankruptcy Appeal, affirming in part and reversing in part the Memorandum of Decision, and remanding the case to this Court for further proceedings consistent with its ruling (the "Ruling on Appeal", ECF No. 58).

The Ruling on Appeal did not disturb the findings of fact in the Memorandum of

---

[1] The Memorandum of Decision on Complaint to Determine Dischargeability of Debt is dated November 10, 2014, and will hereinafter be referred to as "Memorandum of Decision", (ECF No. 34).

Decision and affirmed the conclusion of law that monies owed to the Plaintiff in connection with a fund-raiser are nondischargeable pursuant to Section 523(a)(4). In addition, the District Court upheld this Court's determination that "the Plaintiff presented a more credible account of the events alleged in the Complaint." (Ruling on Appeal at 15). However, the District Court vacated the judgment and instructed this Court to determine if the entire underlying debt owed to the Plaintiff, which also included debts for the purchase of an automobile and a home, "arose out of defalcation and embezzlement – or some combination of defalcation and embezzlement and fraud and/or willful injury to property". (Ruling on Appeal at 11).

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.     Findings of Fact

The findings of fact in the Memorandum of Decision are incorporated in this Decision. The Court also finds the following additional facts:

1.     The Plaintiff testified that as a result of the serious injuries she sustained in an automobile accident on December 14, 2005, she: (i) was in a medically induced coma until January 2, 2006; (ii) had her gallbladder, spleen, and half of her liver removed; (iii) was released from the hospital on February 2, 2006, was in a cast with a bag draining her liver, and had to walk with a walker at the age of 19; (iv) rehabilitated from her injuries for a period of three years; and (v) did not return to work until January 2009. (Testimony of Plaintiff at January 30, 2014 trial; Plaintiff's Exhibit O at 6-8).

2.     Between August and September 2006, the Defendant asked the Plaintiff for a loan to buy an automobile. The Defendant testified that she told the Plaintiff she wanted to buy an automobile so she could drive the Plaintiff to her many doctor appointments. When she asked the Plaintiff for the automobile loan, the Defendant knew the Plaintiff had received

2

insurance proceeds from the automobile accident. No formal loan documents were prepared or signed to memorialize the loan. The Defendant did not present any evidence that she tried to obtain an automobile loan from any party other than the Plaintiff. (Testimony of Defendant at January 30, 2014 trial).

      3.      The Plaintiff testified that she loaned the Defendant the money to buy the automobile because: (i) she trusted the Defendant, even though she believed the Defendant had improperly used some of the fund-raiser proceeds; and (ii) the Defendant appeared apologetic and the Plaintiff believed that the Defendant "wasn't going to do it to [her] again." (Plaintiff's Exhibit O at 19-20).

      4.      In June 2007, the Plaintiff and the Defendant's brother were arrested for disorderly conduct in connection with an altercation. As a result of this arrest, the Plaintiff obtained a no-contact order against the Defendant's brother. The Defendant testified that the court that issued the no-contact order told her mother that the no-contact order extended to the Defendant and her mother. (Testimony of Defendant at January 30, 2014 trial; Plaintiff's Exhibit O at 23).

      5.      The Defendant testified that she ceased making payments on the automobile loan as a result of the no-contact order. (Testimony of Defendant at January 30, 2014 trial).

      6.      In and around September and October 2008, the Plaintiff and the Defendant's brother resumed living together; however, the Defendant never resumed making payments to the Plaintiff for the automobile loan. (Testimony of Defendant at January 30, 2014 trial).

      7.      On November 4, 2008, the Plaintiff signed a document entitled "Gift

Letter". The Gift Letter provided the Defendant with $25,000.00 to be used for the purchase a home located at 12 Coe Avenue, Portland, Connecticut (the "Property").

        8.      The Plaintiff testified that when she signed the Gift Letter: (i) she believed she was making a loan to the Defendant and not a gift (Plaintiff's Exhibit 2; Testimony of Plaintiff at January 30, 2014); (ii) the Defendant represented that the $25,000.00 would help her secure a mortgage on the Property where the Plaintiff, the Defendant, the Defendant's brother, and the Defendant's mother would all live together (Testimony of Plaintiff at January 30, 2014 trial; Defendant's Exhibit O at 29); (iii) the Defendant agreed to repay the Plaintiff the $25,000.00, from an income tax refund, a first-time homebuyer tax credit, any money made from breeding dogs, and any other monthly income she received (Testimony of Plaintiff at January 30, 2014 trial); (iv) she and the Defendant had a verbal agreement regarding the repayment of the $25,000.00 regardless of the Gift Letter; and (v) she was advised by the Realtor, Mr. Paul Crancik, that the only way the Defendant could purchase the home was to present the signed Gift Letter to the lender to demonstrate the source of the funds for the down payment to purchase the Property. (Testimony of Plaintiff at January 30, 2014 trial; Defendant's Exhibit O at 29).

**B.**    **Conclusions of Law**

    **1. The automobile loan**

Although the Complaint does not specifically allege "defalcation" with regard to the automobile loan under Section 523(a)(4), the Plaintiff proved by a preponderance of the evidence that the debt was obtained by defalcation while acting in a fiduciary capacity, and therefore, is nondischargeable.[2] *See* 11 U.S.C. § 523(a)(4); *Grogan v. Garner*, 498 U.S. 279 (1991); *In re Lyon*, 348 B.R. 9, 24 (Bankr. D. Conn. 2006).

---

[2] To the extent necessary, pursuant to Fed. R. Civ. P. 15 and Fed. R. Bankr. P. 7015, the Plaintiff is granted leave to amend the Complaint to allege fiduciary defalcation under Section 523(a)(4).

To prevail on a claim of fiduciary defalcation under Section 523(a)(4), two elements must be proven: (i) the existence of a fiduciary relationship between the Plaintiff and Defendant; and (ii) a defalcation committed by the Defendant in the course of that relationship. *In re Nofer*, 514 B.R. 346 (Bankr. E.D.N.Y. 2014); *accord, In re Yoshida*, 435 B.R. 102, 108 (Bankr. E.D.N.Y. 2010); *In re McDermott*, 434 B.R. 271, 280 (Bankr. N.D.N.Y. 2010), *aff'd sub nom. Econ. Dev. Growth Enterprises Corp. v. McDermott*, 478 B.R. 123 (N.D.N.Y. 2012).

### a. Debtor acting in a fiduciary capacity

As noted in the Memorandum of Decision, the issue "of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." *Nofer*, 514 B.R. at 353 (*quoting Andy Warhol Found. for the Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 170 (2d Cir. 1999)). The Bankruptcy Code does not define the term "fiduciary" for purposes of Section 523(a)(4). *Yankowitz Law Firm v. Tashlitsky (In re Tashlitsky)*, 492 B.R. 640, 644 (Bankr. E.D.N.Y. 2013) (*citing In re Hayes*, 183 F.3d at 167). The precise scope of the term is a matter of federal law, although "its application frequently turns upon obligations attendant to relationships governed by state law." *In re Hall*, 483 B.R. 281, 292 (Bankr. D. Conn. 2012), (*quoting In re Hayes*, 183 F.3d at 166). "What constitutes a fiduciary relationship under Connecticut law is a separate issue from what constitutes a 'fiduciary' within the purview of Section 523(a)(4) of the Bankruptcy Code", and not all state law fiduciaries also meet the definition of "fiduciary" for purposes of Section 523(a)(4). *Id.*

Nevertheless, "[i]n the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for

5

the benefit of another." *Id.* (*quoting Hi–Ho Tower, Inc. v. Com–Tronics, Inc.,* 255 Conn. 20, 38, 761 A.2d 1268 (2000)). Courts in this district have held that "'fiduciary capacity' under Section 523(a)(4)" may include circumstances involving "'a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter.'" *In re Wood*, 488 B.R. 265, 276 (Bankr. D. Conn. 2013) (*quoting Hayes,* 183 F.3d at 167 (ellipsis in original)).

The circumstances surrounding the debts owed to the Plaintiff demonstrate that the Defendant was in a position of ascendancy over the Plaintiff at all times. The Plaintiff credibly testified about the severity of her injuries, which resulted in her diminished mental capacity, and the eventual need to place her financial affairs into a conservatorship in 2009. The Defendant's own testimony supports the conclusion that she was, at all relevant times, in position of ascendancy over the Plaintiff. The Defendant testified that she was keenly aware of the severity of the Plaintiff's injuries as a result of the automobile accident, having spent "every free moment at the Plaintiff's bedside while the Plaintiff was in the hospital". (Testimony of Plaintiff at January 30, 2014 trial). The Defendant further testified that she asked the Plaintiff for the automobile loan just six months after the Plaintiff was released from the hospital. When she asked the Plaintiff for the automobile loan, the Defendant knew the Plaintiff had received insurance proceeds from the injuries sustained in the automobile accident.

The Defendant was acting in a fiduciary capacity when she organized the fund-raiser, and when she asked the Plaintiff for the automobile loan. The Debtor continually represented to the Plaintiff that she would take care of her, raise money to pay her bills, and buy an automobile in order to transport the Plaintiff to her numerous doctor appointments. The Defendant's representations and actions constantly reinforced to the Plaintiff that the Defendant would protect

her while she was in such a compromised state. The fiduciary relationship continued until 2009, when a Conservator was appointed by the Connecticut Superior Court to manage the financial affairs of the Plaintiff.

The preponderance of evidence established that a difference in power existed between the Plaintiff and Defendant that gave the latter a position of ascendancy over the former. Therefore, under the particular circumstances of this case, the Defendant acted in a fiduciary capacity and had a fiduciary duty to the Plaintiff, satisfying the first element for nondischargeability of the automobile loan under Section 523(a)(4).

### ii. **Defalcation**

The second element that must be proven by a preponderance of the evidence is that a defalcation occurred. "Defalcation" under Section 523(a)(4) is generally defined as "a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation." *In re Hall*, 483 B.R. 281, 294 (Bankr. D. Conn. 2012). The Supreme Court recently clarified that defalcation involves a "culpable" mental state, comprising either knowledge or gross recklessness regarding the improper nature of the relevant fiduciary conduct. *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757, 185 L. Ed. 2d 922 (2013).

Sufficient evidence was introduced to find that a defalcation occurred in connection with the automobile loan. The Defendant's testimony regarding her failure to continue making payments contained unsupported assertions. The Defendant testified that she stopped making the automobile loan payments when the Plaintiff obtained a no-contact order against her brother and that the court "told her mother" that the order extended to the Defendant and her mother. No corroborating evidence was admitted to support the Defendant's claim. The Defendant's

7

testimony is not credible and is undermined by the fact that the Defendant did not make any of the automobile loan payments once the Plaintiff and the Defendant's brother resumed living together. The Defendant's actions demonstrate her intent to wrongfully appropriate the automobile loan proceeds. In the case of *In re Shao Ke*, the court found a Section 523(a)(4) defalcation, and noted that the ruling was "predicated both on the evidence presented and Debtor's lack of credibility." *Shao Ke v. Jianrong Wang*, 5:13-CV-1203-GTS, 2014 WL 4626329 (N.D.N.Y. Sept. 15, 2014). The finding that a defalcation occurred in this case is based on the evidence presented at trial and the Debtor's lack of credibility.

Given that both elements of a Section 523(a)(4) claim have been proven by a preponderance of the evidence, a judgment of nondischargeability will enter in favor of the Plaintiff in connection with the automobile loan.

### a. The Home Loan

**False pretenses, false representations, or actual fraud**

Count Three alleges that the Defendant deceived the Plaintiff into lending her $28,290.87 to purchase the Property by misrepresenting to the Plaintiff that she would repay the loan in full and that the Plaintiff would be able to live in the Property rent free. Under Section 523(a)(2)(A), the creditor must prove, by a preponderance of the evidence, that:

> (1) the debtor made the representation; (2) the debtor know the representation was false at the time it was made; (3) the representation was made with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

*Michalek v. Ochs (In re Ochs)*, 516 B.R. 213, 218 (Bankr. D. Conn. 2014). The level of reliance on the representation is justifiable reliance, *Id.*, and the false representation must be knowingly

and fraudulently made. *F.D.I.C. v. Roberti (In re Roberti)*, 201 B.R. 614 (Bankr. D. Conn. 1996).

The first element of the Section 523(a)(2)(A) home loan claim—the Defendant made a representation—was established by a preponderance of the evidence. The Plaintiff testified that when she signed the Gift Letter, the Defendant represented to her that the home loan would be repaid. The Plaintiff also testified that the Defendant further represented to her that signing the Gift Letter would have no effect on the full repayment of the home loan, but would merely be used to obtain a mortgage. Therefore, the first element of the Section 523(a)(2)(A) claim has been proven by a preponderance of the evidence.

The second element—the Defendant knew the representation was false at the time she made it—was also proven by a preponderance of the evidence. By verbally assuring the Plaintiff that she would repay the home loan and that the Plaintiff could live at the Property rent free, the Defendant manipulated the Plaintiff into signing the Gift Letter with no intention of ever repaying the home loan. By convincing the Plaintiff to sign the Gift Letter, the Defendant could assert—as she did in this case—that the $25,000.00 was a gift and not a loan, despite her many representations to the contrary. The Defendant knew her representations were false at the time she made them. Therefore, the second element of the Section 523(a)(2)(A) claim has been satisfied by a preponderance of the evidence.

The representation must also have been made with the intention of deceiving the Plaintiff. An "[i]ntent to deceive is an issue of fact to be determined based on the totality of the circumstances." *Law Offices of Donna Buttler v. Bonebo (In re Bonebo)*, 345 B.R. 42, 47 (Bankr. D. Conn. 2006). The Court credits the Plaintiff's testimony that the Defendant represented to her that signing the Gift Letter would not affect the verbal agreement that the

9

Defendant would repay those funds to the Plaintiff.  The Plaintiff testified that she never intended the monies loaned to the Defendant to buy the Property to be a gift.  The Plaintiff further testified that the Defendant assured the Plaintiff that the Gift Letter represented a loan, but needed the loan to be in the form of a gift letter in order to obtain the mortgage.  Based on the circumstances described by the more credible testimony of the Plaintiff, the Court finds that the Defendant represented to the Plaintiff that the Gift Letter funds were a loan and not a gift.  Therefore, the Defendant's representations to the Plaintiff were made with the intent of deceiving the Plaintiff, satisfying the third element of the Section 523(a)(2)(A) claim by a preponderance of the evidence.

   The fourth element—the Plaintiff relied on the representations of the Defendant—was also satisfied by a preponderance of the evidence.  The Court has found that the Plaintiff relied on the Defendant's representations that she would repay the home loan when the Plaintiff decided to make the loan and sign the Gift Letter.  Even though the Gift Letter exists, the trial testimony supports the conclusion that the Defendant led the Plaintiff to believe that the Gift Letter was needed to obtain the mortgage and that the money would be repaid.  At the time the Plaintiff signed the Gift Letter, the Defendant knew the Plaintiff relied on her and believed the Defendant was taking care of her needs.  Therefore, the fourth element of the Section 523(a)(2)(A) claim has been satisfied by a preponderance of the evidence.

   Finally, the fifth element—the Plaintiff sustained losses and damages as the proximate result of the Defendant's representations—was also satisfied by a preponderance of the evidence.  If the Defendant did not represent to the Plaintiff that the Gift Letter funds would be repaid to the Plaintiff, the Plaintiff would not have loaned the Defendant the money to purchase the Property.  In making the home loan to the Defendant, the Plaintiff relied on and trusted the Defendant's

representations that the Gift Letter was not a gift, but was a loan. From the evidence presented at trial, it is clear that the Plaintiff has satisfied the fifth element of the Section 523(a)(2)(A) claim by a preponderance of the evidence. Therefore, the Plaintiff has proven by a preponderance of the evidence that the home loan was obtained through false representations. Accordingly, the debt is deemed nondischargeable pursuant to Section 523(a)(2)(A).

### III. CONCLUSION

In accordance with the instructions in the Ruling on Appeal, the Court concludes that the automobile loan debt is nondischargeable pursuant to Section 523(a)(4), and the home loan debt is nondischargeable pursuant to Section 523(a)(2)(A). In light of the ruling in the Memorandum of Decision that the fund-raiser debt is nondischargeable under Section 523(a)(4), and the rulings contained in this Decision, the entire $13,200.00 debt owed on the Mortgage Note is deemed nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).

IT IS SO ORDERED at Bridgeport, Connecticut this 10th day of February 2017

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut